Good morning. My name is Nadia Wood, and I represent Jeffrey Bennett, the appellant. And I will be sharing my time this morning with Mr. Girtz, who represents Jennifer Hoagland. We agreed that I will have ten minutes to start the argument. Then Mr. Girtz will have five minutes. Then we will let Mr. Rank have his turn for the full 20 minutes, and then I will handle the rebuttal for five. Thank you. I'm here to talk to you about the two issues, two main issues, in Mr. Bennett's appeal, and that's the statute of limitations and the sufficiency of the evidence. Essentially, the government proved a little too little too late in Mr. Bennett's case. If you look at the evidence that connects Mr. Bennett to the mailing of the check, of the March 16th check, there is a three-day gap between the time the check was printed and the time the check ended up in a bank account that belongs to business. There is nothing that connects Mr. Bennett to the mailbox, to the deposit slip. There was never any deposit slip. There was never any evidence introduced at the trial level. Who received the check? Where was it received? Who was in charge of the mailbox? What was the routine practice of the business receiving the checks? Who went to the mailbox on a daily business? Well, there was evidence of the routine practice of sending, right? There was evidence of routine practice of sending two months prior and three months after the fact. So was there some reason to believe it would have changed in the interim? Well, when that person testified, Diane Gumbel, when she testifies on page 582 of the transcript, she says that the checks went into U.S. mail after she signed them. Obviously, when she's out on maternity leave, someone else has to sign them. So some routines did have to change. We don't know which ones because she was not there to testify about that. This is statute of limitations on the mail fraud charge. Is that where you're going with this? Right now, we're talking about the sufficiency of the evidence. Oh, sufficiency. Okay. All right. Why is this critical to the sufficiency? Why is it critical to anything except the count one limitations? This question about the check. Because for the conspiracy, the count two, the conspiracy to commit mail fraud, the last alleged overt act and the indictment is the receipt of the check. The last overt act proved, the government argues. They don't all have to be alleged in the indictment, do they? They don't all have to be alleged, but when they proved the last, they're arguing that the last act proved would be the receipt of the check. The government's argument is that the financial transactions that followed the receipt of the check. Was there any evidence of concealment or use of the proceeds or anything afterward? I don't believe so, Your Honor. I did not see that in the government's brief. Not when I got out of the government's brief. I haven't studied the trial records. The magistrate judge said the last overt act includes acts of concealment. I'm aware of that report and recommendation, Your Honor. That's in the addendum. The magistrate judge does say that, but when reading the government's brief, I was not able, in reviewing the trial record, I was not able to come up with a specific instance that the government identified of acts of concealment. The government, in the response brief, did list some acts that were mere bank transactions. Bennett did withdraw some money from one bank account, put some money in the other bank account, but the government did not explain how those were acts of concealment, how those were anything more than mere banking transactions. By that extension, that argument means as long as you have any control over the money, indefinitely, the statute of limitations never runs out. So your argument is that there was no act of concealment ever proved, so the conspiracy charge fails on that count, and certainly not within the statute of limitations for a conspiracy count. Is that right? That's right, Your Honor. There was no act of concealment following the receipt of the check. Actually, there was no act of concealment at any point of time. The checks were legitimately printed, were legitimately received and deposited, and Mr. Bennett and Mr. Hoagland both maintained that this was a legitimate business, that they were goods, they were promotional goods, they were shipped, they were received. They had some testimony from the postal inspector. There was substantial evidence they were sham companies. There were several witnesses who... Mr. Bennett's companies, not... that it was just money in from advance and money out to Bennett and Jennifer Hoagland. That was the government's theory of the case, Your Honor, but... Was there evidence? I mean, sufficiency, all there has to be is a smidgen of support for that. Your Honor, we're specifically talking, when we're talking about sufficiency of the evidence, about the proof of the receipt of the check. But that doesn't do anything to the conspiracy. Why isn't the bringing in the fruits of the fraud part of the scheme to defraud, why isn't that part of the conspiracy? Because the case law doesn't support it, Your Honor. It is not as broad. The cases that are cited in the government's brief for that proposition are not... What's your best Eighth Circuit case on this conspiracy issue? Well, I'm hoping it will be this one. Ever since Pinkerton, I mean, we've been taught that conspiracy is about as broad as the government wants it to be. What case reigns in the three generations of post-Pinkerton authorities? Because the act has to be done in furtherance of conspiracy. It can't be just a banking transaction. Somebody goes and withdraws money from the bank because they need pocket change. It has to be somehow done in the furtherance of conspiracy. So how are the... Isn't depositing it an act in furtherance of the conspiracy? Within what time? Oh, excuse me. I'm sorry. Isn't the act of depositing it into the bank account so that they can later have access to it in furtherance? But who deposited, Your Honor? That's not on the record either. There's nothing connecting Mr. Bennett to depositing of the check. Well, I suppose anyone working for his sham companies was either a knowing or unknowing participant in the conspiracy. But this is not a sham company. This is a legitimate business. That's what you say, but the government says to the contrary. No, Your Honor. This business cited an article in a brief that talks about this company actually provided meals. The four Memphis companies or the one in each state that Bennett set up. We're talking about the ACS. Their catering solution actually provided meals. They had business. If you look at the appendix, the appellant's appendix, it includes numerous checks that were received from other companies. They did have legitimate business. In fact, the government in its opening talked about how this was a legitimate business. This business had an active operation. They had employees. He had other people working for him. They received numerous checks, and there's no testimony. Who was in charge of opening up all the envelopes? They were sham for the purposes that these phony invoices were transmitted from these four companies. The evidence, my looking at the record, that mailed 40 invoices from these companies that were fraudulent. And you're saying that because they may have had some legitimacy for some purposes, they couldn't be sham companies for the purpose of this fraud and conspiracy? No, Your Honor. I'm saying that this particular business was a legitimate business. And these people, these other employees who opened checks and deposited them and did other business operations, they were legitimate employees. And that in this case, when you talk about sham invoices, when the postal inspector, the main investigator, Allen Valdez, was asked. Did Mr. Bennett get the benefit of personally the deposits that we're talking about? Well, he was the president of the company, Your Honor. And the employees who, anyone other than he personally, who acted on behalf of the companies in making deposits, was doing so as his agent, right? So whether they're a knowing participant in the conspiracy or an inadvertent assister of the conspiracy, I don't see how that detracts from the relevance of capturing, Mr. Bennett capturing these proceeds of the scheme to defraud. Your Honor, again, when the conspiracy is over, when the purpose is achieved, and if the purpose was to obtain money. Give me the Eighth Circuit case for that. I mean, that's a pretty, a big iron curtain doesn't come down. If all of the conspirators are in the process of gathering up the fruits of their crime and putting them to their various individual advantages, what case says that none of that counts because, quote, the conspiracy is over? Well, what about the United States, the Sonico case? I don't know, I'm just... Your Honor, you keep asking about the Eighth Circuit case precedent. All right, so that's the one I should read? I don't even see it at the table. That's the one, the unforeseen benefits, the unforeseen benefits, and the... I don't see that in your table of authorities. Your Honor, I see that I'm in my rebuttal time while... I'm just looking for what I should be studying, and I'm not getting much help. I will look up the citation while Mr. Gibbs... Put it in a 28-J letter to the court. Yes, Your Honor, thank you. I have a question on your letter about the impact of Mr. Hoagland's death. Yes. That doesn't affect count one, does it? I believe it does, after I submitted the 28-J letter, which, again, is very limited. I looked at the count one, the way it was charged, and the way it was instructed to the jury, and the jury was giving the aiding and abetting instruction, so there's no way to tell... Wait, wait, you can aid and abet. It's not the same argument with aid and abet as it would be with conspiracy. It is true, and the aiding and abetting instruction was proper. I am arguing that. You think all three are gone? I think so, because there's no way to tell whether the jury convicted Mr. Bennett on a stand-alone. We think he's guilty because he did the whole thing, the whole mail fraud charge by himself, or because he was aiding. He didn't abet a non-person. I don't know what you're calling this. Void ab initio means that he never existed? Legally innocent? He does not have the criminal mind needed to be unindicted co-conspirator, co-conspirator? I mean, that's factually wrong. I read the 11th Circuit case you cited, and, of course, it's almost a throwaway, except insofar as one of their precedents said you can't recover a fine or forfeiture from the estate. Your Honor, I have not had much time to research this issue. I would love to give you a full briefing after this argument is over. I'm sure Mr. Rank would love to. Only if we ask. Only if you ask. Thank you. Thank you. Mr. Girtz? Thank you, Your Honor. Daniel Girtz. May it please the Court. On behalf of Mrs. Jennifer Hoagland, I'd like to focus my remarks on the prejudice that arose from the failure to sever her from her case from all the fraud and money laundering that you've read about in the briefs. The prejudice is what this Court has called some appreciable chance that the result for her would have been different had the severance been granted. What the government had to prove against Mrs. Hoagland was tax evasion, and specifically that she had knowledge that the money that had been received and put into the bank accounts was taxable income. And you're saying, I guess it seems to me critical to your argument, is that none of the background, the fraud background, would have been admissible in a separate trial. Yes, Your Honor. Well, that's not essential, but that is my position is that I can't imagine that that would be true, that the jury in a tax evasion trial would not be entitled to know the full background of the evasion. Well, my argument motive and purpose and effect and so forth, I think all the fraud comes in anyway, not perhaps in the same quantity or quantity relationship. Well, the quantity was very substantial. If the government could, following your logic, Your Honor, if the jury were told this is money that was produced by the fraud from Mrs. Hoagland's husband to establish that it was, in fact, not a gift, an inheritance, or some other non-taxable income, I think you have a point there. But in this case, the jury was specifically permitted to consider the fraud against her, even though it had been, we had... In what way? Specifically permitted. I thought there was careful instructions on it. They were not separate. There were not careful instructions, no limiting instructions. There were instructions given that each defendant has to be considered separately, each count has to be considered separately, and the evidence against each defendant considered carefully, but no instruction limiting the evidence that could be used against Mrs. Hoagland. I don't understand why that would be appropriate. I guess the district court didn't understand either. Well, it would be appropriate because... The main reason I'm suggesting that the reason for the act of evasion is relevant to whether, for among other purposes, the intent to evade. I don't... It's an element of the tax crime, isn't it? What is an element, Your Honor? Intent. Intent is, yes, but she did not know about the fraud. There was no evidence that she knew anything about the fraud. Well, the district court thought from the evidence the jury could infer to the contrary, even though there was... I mean, he was able to say it's sentencing for purposes of... For sentencing purposes. Well, what the district court said is that there is no evidence that she was aware of the broader fraud or participated in the broader fraud. I suspect in a stand-alone tax evasion trial it would have been perhaps different. Well, Your Honor... The question of her knowledge would have been probed much more aggressively by the government, I suspect. Well, in this case there was no evidence about what her knowledge was. The jury was permitted to speculate that merely because she was married to the fraudster sitting next to her at council table that she was more likely than not to have had knowledge of the fraud. If she has knowledge of the fraud... Wait, you're saying that the instruction was the jury had to infer that? There was no instruction that told them they had to infer that, but there was no instruction that prevented them from inferring that. Well, so what? Because that's rank speculation. We don't even know that it's speculation that the jury did that speculating. Well, we know that the district court did it. The jury was properly instructed on the crime of tax evasion. It was properly instructed on the crime of tax evasion. Okay. And you're saying that the jury somehow wandered outside of those instructions and did all kinds of speculating not supported by the evidence, and that's the only reason she was convicted. That's your argument, right?  I don't think we can expect anything better from the jury. And in this case, with the amount of fraud and the fact that the district court specifically said it was not going to do as this court has repeatedly encouraged telling the jury what evidence could not be used against this defendant or could not be used on this specific charge. But the district court said, I can't do that because it's wrong. It's wrong that the jury can't be aware of the background facts to the tax evasion. I can't tell them to shut out the relevant evidence. Well, that's where the district court abuses discretion because that was not relevant to her tax evasion. I agree it was relevant to Mr. Hogan's tax evasion because he had knowledge of it. Therefore, he knew he had the guilty mind and the willfulness. She did not. Well, wasn't it at least relevant to the extent that the government had to prove that it was taxable income? And to that extent, Your Honor, I think it would be appropriate for the jury to be informed, here's where the money came from, or in a separate trial, the money was produced by fraud. Here's where it came from, this fraud. So essentially all the fraud evidence comes in. It comes in, but the district court can tell the jury and should tell the jury that you cannot consider this fraud as evidence of her knowledge, of her willfulness, because she didn't know about it. And that is what the court should have done, as this court has encouraged, to prevent the prejudice from occurring. And my time has run out. Thank you. Thank you. Mr. Wrang. Thank you, Your Honor. Counsel. Judge Loken, I think that what you have been talking about with respect to the final argument with Jennifer Hoagland is exactly right, which is the question of, was the jury able to compartmentalize the evidence against the defendants? And that's the primary question at issue. The instructions in this case, both the preliminary instructions and the final instructions, very well laid out and delineated the case against Jennifer Hoagland versus the case against the other defendants. It was clear, the indictment was very clear, the charges were very clear, and that was explained to the jury very clearly by Judge Schultz in the opening instructions and very clearly by Judge Schultz in the final instructions. I think it's important, Your Honor, that, and Judge Loken, you talked to Mr. Girtz about this issue, which is that Judge Schultz said, I can't break it down on a witness-by-witness basis. I can't instruct in that way. But, Mr. Girtz, if you want to come up with some final instructions that you think are appropriate, limiting instructions, please do so. And that's referenced in that exchange in around 312 to 315 of the trial transcript. And tellingly, Mr. Girtz never came back with any sort of additional instructions on the final instructions. And, in fact, after the instructions were finalized, the instructions that were given to the jury were finalized, everyone had an opportunity to object to the different instructions. We did. There was a charge conference at which people objected. And the final instructions that went to the jury, Mr. Girtz was given an opportunity to say, do you have anything else? Do you have any additional information? Do you object? And he said no. And so, it's understandable. Had he been shut out earlier, though, from this instruction? Was this a, a trial is generally a progressive thing, and at some point, after you've been rebuffed, you don't have to renew it again. Judge Beam, the difference is that what Judge Schiltz said to Mr. Girtz is, on a witness-by-witness basis, I don't think it's appropriate to somehow parse this out. In fact, I can't parse it out. It's difficult to do. If you, if you come up with something, I'll consider it. But all Mr. Girtz did was refer to the Eighth Circuit model instruction for 404B evidence. And what Judge Schiltz said to Mr. Girtz was, I would be, I would welcome an instruction in final, for the final instructions if you think something is appropriate. And Mr. Girtz proposed nothing. And, in fact, did not object to the final instructions that went to the jury. That, I think, is, is critical in terms of the complaints now, that there were somehow an inability on the part of the jury to compartmentalize that evidence. It's clear, based on the very careful instructions given by Judge Schiltz, that the jury didn't have any difficulty compartmentalizing that evidence. And, in fact, what Mr. Girtz did in the closing arguments was utilize the fact that there was a bunch of fraud committed by Clayton Hoagland and Jeff Bennett to his advantage. And Mr. Girtz said something a moment ago. Closing arguments transcribed the individual. Yes, sir. Yes. In fact, I quote some portions of Mr. Girtz's closing argument in the government, the appellee's brief in this case. One of the things that Mr. Girtz said just a moment ago was that the jury was not told that this was fraud produced by Jennifer Hoagland's husband. And, in fact, the jury was told that repeatedly. That is exactly what the government's case was. The government focused on the fraud committed by Jeff Bennett, fraud committed by Clayton Hoagland, and then explicitly described the tax evasion case against Jennifer Hoagland. I would urge this Court, if it has any concerns about what the government's theory of the case was, where there was an attempt to create some sort of prejudice and utilize this in closing argument, read the government's closing argument. The government very clearly was prosecuting Jeff Bennett, Clayton Hoagland for the two fraud schemes and very clearly was charging Jennifer Hoagland for tax evasion. What was the evidence that she knew of the fraud perpetrated by her husband? I apologize for interrupting, Your Honor. The evidence was that she knew where the money was coming from, and specifically the background of this is that Jennifer Hoagland was the payee on 51 different checks over about a three-year period from four separate sham companies. Payee? Yes. She received, to make sure I understood what I said, but yes. She was the one the checks were written out to. She endorsed the back of the checks. She deposited those checks into a joint bank account, spent the proceeds of that money. And these were four sham companies, companies that she did no work for, and the evidence showed she did absolutely no work for. She got no documentation, no paperwork, no W-2s, no 1099s, nothing. And significant to that point, Your Honor, this is that each year she was the person, the point person for filing the tax returns for Jennifer Hoagland and Clayton Hoagland. She went and met with the accountants, Barbara Butler in Hudson, Wisconsin, and then again when they moved down to Texas, a CPA agency in Texas, she was the one that brought the returns in, met with the return preparers, and each year over that three-year period where she was paid more than $200,000 and 51 separate checks from four companies that she did no work for, including two companies run by an employee of her husband's at Dart Logistics, she reported none of that. She concealed that income from her tax preparers. So in your view, there was plenty of evidence that a reasonable juror could have understood that she knew about the fraud? I think that a reasonable juror could have concluded based on the evidence that she had reason to conceal that information. And what's significant for the tax purposes, Your Honor, is two things. One, because she knew that this money wasn't getting reported in any way, because it was of suspicious provenance, she knew that when she failed to report it, when she went to the tax preparers each year, that it was never going to get discovered by the IRS. Was there also some evidence that they tried to undo this by going for some later help or is that another case we have this week? There was evidence, Your Honor, that when the criminal investigation started that both Clayton Hoagland and Jeff Bennett ran out to an H&R block in Texas and filed some amended returns. Did she know about that? There's no evidence that Jennifer Hoagland knew about that. Okay. Nothing in the record. In fact, the tax preparer that did the amended returns for Clayton Hoagland met only with Clayton Hoagland. But what is significant to the fraud is that she knew and the jury could conclude that there was a basis for her knowledge and willfulness in terms of the tax evasion that she knew that the money wasn't going to get reported to the IRS. And why wasn't it getting reported to the IRS? Because these are companies that she doesn't do any work for. She's the payee. There's no basis for her getting that money. And then on the flip side to that, she understands that to report that income, the jury could conclude to report that income in the returns might cause problems with the embezzlement that had taken place as well, might reveal the embezzlement that's taken place. Can you address the statute of limitations question with respect to the 1341 and 371 counts? Sure. The easiest answer to that question, Your Honor, is the plain language of the 1341 statute says a number of different things. And I think counsel has, both counsel for Mr. Hoagland when he was still an appellant in this case and counsel for Mr. Bennett have just misread 1341 and really overstated the Eighth Circuit's precedent in this case. In Mr. Bennett's reply brief, he says that the Eighth Circuit has ruled explicitly that the placing in the mail is the only operative factor in a mail fraud. And that's just not true. There are four separate ways under 1341 that there are four separate acts that can take place in order to trigger the statute of limitation. And they are placing the mail in the post office. That's sort of what has been fixed on by Mr. Bennett. Our Pemberton case kind of contradicts that, doesn't it? I don't believe so, Your Honor. I think as the report and recommendation in this case characterized the Pemberton reference as kind of an offhanded reference. And I'd urge the court to look at Pemberton. Pemberton doesn't look at this issue. I have looked at that and I've also looked at U.S. v. Eisen from the Second Circuit, U.S. v. Gessodennis from the Seventh Circuit, and Hofinger from the Third Circuit that all seem, as I read them, to hold that mailing is the triggering event. I think what those cases hold is mailing. The Sixth Circuit case that you cite is the only one, isn't it, that goes the other way? I think all those cases say that mailing is an operative act, not the operative act. And I think the distinction is important in light of the plain language of the statute, Your Honor. And I would take a look at, and you probably have read the Crossley decision, Your Honor, but the Crossley decision actually specifically addresses the cases that you just cited, including Pemberton, and says our ruling is not inconsistent with those cases because they fixed on one of the four ways in which the mail fraud statute can be triggered. There's a case called Major that says that if that's the established rule in our circuit that this panel couldn't undo it. Again, reading Pemberton, Pemberton doesn't say that's the only way it can be established. It says that it is a way that it can be established. And mailing, Your Honor, broadly speaking, doesn't say, in fact, even Pemberton doesn't say it's the act of placing it in the mail. The plain language of the statute lays out four different ways in which the mail fraud statute can be triggered. And that's why the Crossley case, which is the only case that I've seen that actually addresses the question of the other end of the mailing, is the one that addresses this and says the plain language applies. If it's decided that mailing was the triggering thing, what does that do to your case overall? If the site of the mailing is the only triggering thing? If you're late on the mail fraud count, what's that do to the rest of your case? I see what you're asking. First of all, I don't think it does. But if it did, there are a couple of different issues. One, the conspiracy charge still lasts, as does the mail fraud conspiracy charge. Excuse me, the money laundering conspiracy charge. And the income tax evasion, is that... Yes, sir. ...still alive? Yes, sir. And, you know, Judge Loken asked some questions about the other acts that took place after March 17, 2005, in terms of what was charged to the jury. And Your Honor is correct that the government cites a number of things that were charged to the jury. They weren't in the indictment, but the court found there was proof of them that was established at trial, charged the jury, and significantly, there was no objection to those additional overt acts by Mr. Bennett's counsel. The question about does concealment continue or are additional acts of concealment something that can be considered is answered by this court in the Rabinowitz decision. The Rabinowitz decision cited by the magistrate judge, Judge Loken, I believe you were on the panel for the Rabinowitz case, and the Rabinowitz case says that, in fact, filing of tax returns that conceal embezzled income is part of the concealment. And so the question of how long the concealment in this case lasted, we know, and the conspiracy lasted based on the filing of those returns. That argument, though, is limited to the conspiracy count, right? Yes, sir. Yes, sir. And I think that's what Judge Beamhead asked. On the 1341 count, though, what are you relying on, the receipt on March 17? Two prongs of 1341, Your Honor, both receipt, which is both charge in the indictment, and cause to be delivered. Both of those prongs of the 1341 require us getting to the end of the line. So the cause to be delivered language and the receipt language, both of which are relied on by Crossley, are two of the four prongs of operative acts that can take place under the mail fraud statute to trigger the mail fraud statute. So by Mr. Bennett sending off the invoice to DART, demanding payment for that invoice or causing payment of that invoice, a check gets cut, the check comes back to him at his PO box, and so that he is causing that check to be delivered. That check could not have been delivered any earlier than March 17, 2005, and that's one of the points that there is ample evidence of in the record, Your Honor. His act of causing it to be delivered had to occur before March 17, right? But the delivery doesn't take place until afterwards. And there are cases that say if there's evidence that there's mailing but there's no evidence that somebody received it, you can't get the delivery prong. So I assume in the indictment you charged causing to be delivered and then receipt. Yes, sir. Do you get the benefit of the last act? I believe so. I mean, I think we charge in the conjunctive and prove in the disjunctive. Yes, Your Honor. But we don't really know for sure which one the jury found, do we? But we do know that the jury had to find that there was, and I do know what was argued to the jury was that Mr. Bennett received or someone from his company received that check May 17th or later. And so either way, it works under the statute. They do challenge the sufficiency of the evidence suggesting that it was in fact mailed and received by Mr. Bennett on or after March 17th. Can you address that? Sure, Your Honor. And this goes to some of Judge Logan's questions as well. This was Mr. Bennett's company. Air Catering Systems was Mr. Bennett's company. He was the owner of the company. He derived all the benefits from the company. If there were people that received that, it's possible that one of his employees got that check and did it. It then got deposited into Mr. Bennett's company bank account for which he derived the benefits. This was charged as a Section 2 liability case, Your Honor, under very strong agency law, principal agency law. If someone acting at his behest, an employee of his, was the one that received it, that would be the site. What's the evidence, though, that it was mailed? What's the evidence that it was mailed? Well, I guess those are two separate questions, Your Honor. The evidence that it was mailed is the routine practice of the business. And your question to Ms. Woods, I think, was exactly right, which is if the practice of the business is the same over a period of time, that is something that can be considered by the jury. And on a sufficiency standard, we're talking about like most favorable to the government, that there is nothing to indicate that that practice changed in any way during the maternity leave of one of the employees. More importantly, Your Honor, I think... Is the issuing entity and the receiving entity in two different locations? That was what I was just about to address. The Kiefer case, in this case, I think is a very helpful case, and it's cited in the government's brief. The jury is allowed to use its common sense. A company in Minneapolis, Minnesota, that issues the check to a company that is operating in Tennessee, combined with the regular practice of the business, is entitled to use its common sense to reach that conclusion. The evidence that it was received on or after March 17th is what, that the check was dated March 16th? And the earliest it could have been mailed was the 17th. And there is specific testimony on that issue from the postal inspector. Probably what you mean to say is the earliest it could have been received. Yes, Your Honor. It could have been mailed on the 16th. That's right. The earliest it could have been received is March 17th, 2000. And that's consistent also, Your Honor, with the depositing of the check in the bank account control by Mr. Bennett. When does it show that it was deposited? I believe the 19th of March, Your Honor. I'd have to check, but I believe that it's... It's certainly after the 17th. Since you're stuck, my notes indicate that in Pemberton, our court said for mail fraud, the relevant date is the date of the mailing. And you said, you've argued that all these cases say mailing is a possible date, but not the only date. But it's how you... For mail fraud, the relevant date is the date of the mailing. And, Your Honor, first of all, I don't think that Pemberton addresses this precise question, but mailing under the mail fraud statute is a broad concept as well. It doesn't say... What it doesn't say in Pemberton is it's the date that it's stuck into the mailbox. That's one of four ways that it could be triggered. I know that's your argument, but... My argument is that mailing encompasses all four of those dates. And so the date of the mailing can mean the date that it's placed in the mailbox. It can also mean the date that it's delivered. It can also mean, under the plain language of 1341, the date it's received. The mailbox is the agent and the recipient, isn't it? And under fairly well-established law? I'm not sure I understand the court's question. For instance, if you have to file your income tax return on March 15th or April 15th, when you put it in the box, the government is the recipient on that date, so you're not late. Isn't that a usual... The mailbox is the government's agent, so they don't be all the same. It was all the 16th for the defendant here, right? Your Honor, if that were the only operative date, the 1341, the mail fraud statute, would not use the term receipt. There would be no basis for that, and then it would be an irrationally written statute. Seeing no further questions from the panel, I will rely on the briefing, the government's briefs in this case. Thank you. Very good. Do appellants have some time? Ms. Wood, is that for you? Thank you, Judge Loken. I would like to come back to your line of questioning as to conspiracy and the concealment and the proceeds. This is a mail fraud conspiracy. In the statute, the 371, it does not make unlawful all conspiracies or concealment. The Radvinovich case was related to conspiracy to conceal money, and the acts of concealment can be in furtherance of conspiracy if the concealment is the central purpose of conspiracy. But here we have a mail fraud conspiracy. There are no acts past the expiration of the statute of limitations that have any nexus to the object of the conspiracy, which is the mail fraud. There's nothing that connects Bennett to the acts. There's the object of the conspiracy, which is to obtain the lawful object by unlawful means, which is what mail fraud is, as charged by... Well, the statute of limitation doesn't repose the crime. It only keeps you from prosecuting. This isn't a statute of repose, so the crime still exists after this date, if I'm following what you're arguing here. There must be some act... For the conspiracy and other things. In other words... The argument is that the last act, when we... the last date for the... The statute of limitation... For the conspiracy... Repose of the crime if it's relevant to other charges that are involved, right? I'm not sure I'm following, Your Honor. But the point that I'm trying to make is that the financial transactions, or even concealment... Concealment was not the central purpose of this conspiracy. It may have been in Rabinovich's case, but it is not in this case. The conspiracy that is charged in this case is a mail fraud conspiracy. So if they meet after you think the statute of limitations has run, they meet to divide up the money, wouldn't that be an overt act that would be the final overt act? I don't believe so, Your Honor, and I'm out of time. Do you have any more questions, or if I can explain? No? Thank you for your time. You can finish your answer to that question. No, Your Honor. This is not the last overt act because it is not done in furtherance of conspiracy. Once they achieve the object of the conspiracy, whatever the object was... Well, wouldn't dividing up the money so that they can keep the money be part of the object of the conspiracy? Well, it depends on what the particular conspiracy was. In a mail fraud. In this mail fraud... Which is a scheme to obtain property. It is a scheme to obtain property, but the object was to get the company to send them the check. Once the company puts the check in the mail... You think that's the end of it for conspiracy? There's nothing more for the company to do. The offense against the United States is committed by any one of the four acts, as Mr. Rank just told us. It is committed by depositing something in the mailbox, by interacting in the mailbox. 371 makes it a crime. That's when the crime occurred. The object is achieved. Thank you, Your Honor. Thank you, Counsel. The case has been well briefed and argued. Take the cases under advisement. Please call the roll.